# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS WOOD, | No. 3:18-CV-1787 |
| Plaintiff. | (Judge Brann) |
| v. | |
| CAVELLO, OFFICER OF SCI BENNER TOWNSHIP, | |
| Defendant. | |

## MEMORANDUM OPINION

### MAY 21, 2020

Plaintiff Thomas Wood ("Wood"), at the relevant time, a state inmate housed as the State Correctional Institution at Benner Township ("SCI-Benner Township"), Bellefonte, Pennsylvania, commenced this action pursuant to 42 U.S.C. § 1983, on September 10, 2018, naming Officer Travis Civiello ("Civiello")[1] as the sole defendant.[2] Wood alleges that Defendant Civiello used excessive force against him in violation of the Eighth Amendment and various state laws when, on July 12, 2018, he "repeatedly smashed and stomped both of [Wood's] hands in the food aperture," also known as a "wicket."[3]

---

[1] Wood incorrectly identifies Officer Civiello as Cavello.
[2] Doc. 1.
[3] *Id.* at 2, 5; Doc. 33, ¶ 20.

1

Before me is Defendant Civiello's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.[4] For the reasons set forth below, the motion will be granted.

## I.   STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[5] "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[6] A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.[7] An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[8]

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.[9] Although the moving party must

---

[4] Doc. 32.
[5] FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).
[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990).
[7] *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).
[8] *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).
[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986*)*; *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).

establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."[10] It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims."[11]

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.[12] The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[13] "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'"[14] "Inferences should be drawn in the light most favorable to the non-moving party,

---

[10] *Celotex*, 477 U.S. 317, 323 (1986).
[11] *Id.* at 325.
[12] FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008).
[13] *Celotex*, 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).
[14] *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)).

and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."[15]

Significantly, where events at issue have been captured on videotape, as is the case here, the court must consider that videotaped evidence in determining whether there is any genuine dispute as to material facts.[16] The court must view the facts in the light depicted by the videotape.[17]

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.[18] The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.[19] The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue.[20]

---

[15] *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).
[16] *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007).
[17] *See id.* (relying on a videotape in assessing summary judgment evidence and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.").
[18] *Celotex*, 477 U.S. at 322.
[19] *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989).
[20] *Anderson*, 477 U.S. at 249–50.

## II.   STATEMENT OF MATERIAL FACTS

In or about July 2018, Woods was transferred from the State Correctional Institution at Huntingdon to SCI-Benner Township for the purpose of attending a court proceeding in Centre County.[21] He remained at SCI Benner Township for several weeks.[22] While there, he was housed on the J-A Unit, which is SCI-Benner Township's Restricted Housing Unit ("RHU").[23] Inmates housed in the RHU have restricted privileges because they pose a threat to others or must otherwise be restricted in their movements.[24] These inmates receive their meals through a food aperture or "wicket," which is a small, horizontal opening at the front of the cell where trays and cups could be passed from officers in the hallway to inmates in the cell.[25]

On July 12, 2018, Defendant Civiello, a corrections officer with the Pennsylvania Department of Corrections ("DOC", employed at SCI-Benner Township, was assisting another officer with providing dinner meals and drinks to inmates in the RHU.[26] During his deposition, Wood testified that Defendant Civiello attempted to deliver a drinking cup through the wicket, and at some point during that

---

[21]   Doc. 33, ¶¶ 12, 13; Doc. 38, ¶¶ 8, 9.
[22]   Doc. 33, ¶15.
[23]   Doc. 33, ¶ 15, 16; Doc. 38, ¶ 10.
[24]   Doc. 33, ¶ 19.
[25]   Doc. 33 ¶¶ 20, 21; Doc. 38, ¶¶ 11, 12.
[26]   *Id.* at 7, 22; *Id.* at 7, 13.

process, the cup fell on the floor.[27] The falling of the cup created some confusion and included Wood yelling.[28] Wood testified that Civiello closed the food aperture and refused to feed him.[29] Civiello apparently left the area without giving Wood his evening meal.[30] Another officer, identified as Chris, indicated that he would retrieve meals for Wood and his cellmate.[31]

Civiello, accompanied by another officer, returned to collect food trays and cups.[32] Wood refused to return his cup until he received a food tray or spoke to a supervisor.[33] According to Wood, Civiello responded by directing Wood to close the wicket and reaching to his mace-style spray to "impose discipline" on him.[34] Wood held open the food aperture, which prevented Civiello from spraying anything into the cell.[35] Civiello directed him to close the food aperture and return the cup; he refused to do so.[36] Wood testified that Civiello then banged his hands in the food aperture so that it would close and Civiello could proceed with his other duties.[37] Wood further testified that even after Civiello repeatedly smashed his hands in the

---

[27] *Id.* at 23(A); *Id.* at 14(A).
[28] Doc. 33, ¶ 23(B).
[29] Doc. 38, ¶ 14(B).
[30] Doc. 33, ¶ 23(B).
[31] Doc. 33, ¶ 23(D); Doc. 38, ¶ 14(D)
[32] *Id.* at 23(E); *Id.* at 14(F).
[33] *Id.* at 23(G); *Id.* at 14(G).
[34] *Id.* at 23(H); *Id.* at 14(H).
[35] *Id.* at 23(I); *Id.* at 14(I).
[36] Doc. 33, ¶ 23(J).
[37] Doc. 33, ¶ 23(K); Doc. 38; ¶ 14(J).

wicket, he did not remove his hands.[38] Wood concedes that he could have moved his hands to avoid injury.[39] He also concedes that, even after Civiello repeatedly asked him to close the wicket, he held it open in a manner that prevented Civiello from closing it.[40] Wood described his actions as holding the aperture "hostage."[41]

The incident is captured on surveillance video.[42] The video depicts Civiello and another officer collecting cups and food trays. Although there is no audio, it is clear that there is an exchange between Civiello and Wood. Civiello is then seen reaching for his mace. Also visible is Wood's arm protruding from the food aperture, and, Civiello speaking to Wood. The other officer then joins Civiello at Wood's cell and Civiello attempts to close the aperture. He makes several attempts to close it by applying pressure with his hands and body weight. He then steps back from the cell door, leans against the railing, and lifts his right leg and applies pressure with his right foot. The aperture eventually closes and is secured.

DC-ADM 201, authorizes use of force against an inmate when a staff member reasonably believes such force is necessary to protect oneself or others and/or to effect compliance with the rules and regulations when other methods of control are ineffective or insufficient.[43] When force is used, the least amount of force the staff

---

[38] Doc. 33, ¶ 23(L)
[39] Doc. 33, ¶¶ 24-27;
[40] *Id.* at 28.
[41] *Id.* at 26.
[42] Doc. 44.
[43] Doc. 37, p. 62.

member reasonably believes is necessary to achieve the authorized purpose is to be used and the use of force must stop once control is achieved.[44]

Wood received medical treatment the following morning.[45] "He presented with the following injuries to his hands: There is subtle diffuse swelling on the dorsal aspect of both hands. There is also a superficial abrasion on both hands, apprx 1 mm wide x 2" long, the abrasions are covered by a thin layer of tan eschar/scab, there is no wound drainage or bleeding. The patient is able to move all fingers, he can flex and extend the fingers, bilateral hands and wrists. No ecchymosis noted. No diminished function noted."[46]

On July 12, 2018, Civiello filed two misconduct reports concerning the above events. In the first report, Civiello stated that Wood threatened him with harm at the lunchtime feeding.[47] In the second report, Civiello stated, that "[o]n the above date and time Inmate Woods LQ4883 took his food aperture hostage [and] refuse[d] multiple orders to remove his arm from aperture."[48] The report charged Wood with a Class 1 Charge 35, Refusing to Obey an Order. Following consecutive hearings, Wood was found guilty of the charges in both misconduct reports.[49] On the second report, the hearing examiner stated "[t]his HEX believes the written report CO1

---

[44] DC-ADM 201, Section III (B).
[45] Doc. 33, ¶ 30.
[46] *Id*. at 31; Doc. 38, ¶ 17.
[47] Doc. 33, ¶ 35.
[48] *Id*. at 36; Doc. 33-8.
[49] Doc. 33, ¶¶ 37, 38.

Civiello, over Inmate Wood's denial, about how Inmate Wood did refuse multiple orders to remove his arm from the aperture. A preponderance of evidence exists to support charge #35."[50] DC-ADM 801 provides an avenue to appeal to an inmate who has been found guilty of a misconduct charge.[51] Wood did not appeal any aspect of the misconduct proceedings.[52]

### III.  ANALYSIS

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.[53] The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....[54]

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

---

[50] Doc. 33-10.
[51] Doc. 33-5, pp. 30-34
[52] Doc. 33, ¶ 39.
[53] *See* 42 U.S.C. § 1983
[54] *Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

deprivation was committed by a person acting under color of state law."[55] Thus, §1983 limits liability to persons who violate constitutional rights.

Wood cites *Bivens v. Six Unknow Federal Narcotics Agents*, 403 U.S. 388 (1971) as a basis for jurisdiction. As noted by Defendant Civiello in his supporting brief, *Bivens* is the federal counterpart to §1983, which allows an action to be maintained against federal officers.[56] Because Civiello is a state actor, *Bivens* is inapplicable.

### A.   Official Capacity

Wood is barred from imposing liability on Defendant Civiello in his official capacity. The Eleventh Amendment bars suits in federal court by private parties against states, state agencies, and state officials in their official capacities, absent consent by the state.[57] While a state may lose its immunity by Congressional abrogation or by waiver, Congress did not abrogate states' sovereign immunity when it enacted 42 U.S.C. § 1983.[58] Moreover, we have previously noted that the Pennsylvania legislature has expressly declined to waive its sovereign immunity by statute.[59] To the extent that Civiello is sued in his official capacity, he is immune from suit.

---

[55] *West v. Atkins*, 487 U.S. 42, 48 (1988).
[56] Doc. 34, p. 14.
[57] *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–70 (1997).
[58] see *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000); see *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).
[59] See *Lavia*, 224 F.3d at 195; *see also* 42 PA. CONS. STAT. ANN. § 8521(b).

### B.     Exhaustion of Administrative Remedies

Defendant Civiello seeks an entry of summary judgment based on Wood's failure to exhaust available administrative remedies.[60] The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions."[61] The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'"[62]  "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account.  *See Miller v. French*, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")."[63]

While recognizing that the PLRA requires that prisoners comply with the procedural demands of a system created by their jailors, those jailors must comply with the demands of the system they created.[64]  "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed

---

[60]  Doc 34.
[61]  *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.").
[62]  *Id.*
[63]  *Id.* at 1856-57.
[64]  *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019).

11

by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement."[65]

Defendant Civiello first seeks summary judgment based on Wood's failure to comply with DC-ADM 801, which provides an avenue of appeal for an inmate who has been found guilty on a misconduct charge. Within fifteen days of the hearing, the inmate may file an appeal to the Program Review Committee ("PRC").[66] Within seven days of the PRC's decision, the inmate may file a second level appeal to the Superintendent.[67] Finally, the inmate has one last avenue of appeal to the Chief Hearing Examiner.[68] Wood did not appeal the finding of guilty on the pertinent misconduct charge.[69] However, because he is not challenging any aspect of his misconduct proceedings, I summarily reject the failure to comply with DC-ADM 801 as an appropriate basis for summary judgment.

Equally unpersuasive is the argument that Wood failed to exhaust the administrative remedy procedure set forth in DC-ADM 804. On July 16, 2018, in accordance with DC-ADM 804, Wood filed a grievance concerning the events of July 12, 2018.[70] "[T]he primary purpose of a grievance is to alert prison officials to

---

[65] *Id.*
[66] Doc. 33-5, p. 30.
[67] *Id.* at 32.
[68] *Id.* at 33.
[69] Doc. 33, ¶ 39.
[70] Doc. 33, ¶ 40; Doc. 38, ¶ 19; Doc. 33-11; Doc. 33-16; Doc. 37, pp. 13-47.

a problem."[71] In his initial grievance Wood identified the time, date and location of the incident, and set forth detailed and relevant facts of what he perceived as an excessive use of force by Civiello.  In doing so, it is clear that he accomplished the goal of alerting prison officials to his concerns.  The notice rejecting the grievance stated "Grievances related to the following issues should be handled according to the procedures specified in the policies listed and shall not be reviewed by the Facility Grievance Coordinator.  b) DC ADM 801 Inmate Discipline/Misconduct Procedure."[72]  The Facility Manager upheld that decision on appeal.[73]  Wood's appeal to the Secretary's Office of Inmate Grievances and Appeals was denied based on his failure to provide "required and/or legible documentation for proper review."[74]

It is clear that prison officials misconstrued the grievance as challenging his misconduct proceedings.  This resulted in the erroneous rejection of the grievance on procedural grounds and a failure to address the allegations of excessive use of force. This error persisted through the mid-level appeal to the Facility Manager. And, although his final appeal was rejected on other procedural grounds, it is clear that, even had he cured the procedural deficiencies, the appeal would have been

---

[71] *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007).
[72] Doc. 33, ¶ 41; Doc. 38, ¶20; Doc. 33-12.
[73] *Id.* at 43; *Id.* at 21, 22; Doc. 33-14.
[74] Doc. 33, ¶ 44; ; Doc. 38, ¶¶ 23, 24; Doc. 33-15.

rejected based on the misapprehension that Wood was challenging his misconduct proceedings.

Essentially, in misunderstanding the nature of Wood's grievance, prison administrators rendered the administrative remedy procedure unavailable. Therefore, summary judgment based on a failure to exhaust is inappropriate.

### C. Merits of Excessive Use of Force Claim

The cruel and unusual punishment clause of the Eighth Amendment protects inmates against the application of excessive force by correctional officers.[75] In an excessive force claim, the core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.[76] In applying this test, courts are tasked with considering the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.[77]

---

[75] *See Whitley v. Albers*, 475 U.S. 312, 318–19 (1986).
[76] *Wilkins v. Gaddy,* 559 U.S. 34 (2010).
[77] *Id.*

The reasonableness of a particular use of force is often dependent upon the relevant factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[78] Additionally, *de minimis* use of physical force does not qualify as excessive force unless the force is "repugnant to the conscience of mankind."[79] Not "every malevolent touch by a prison guard gives rise to a federal cause of action."[80] To that end, when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain," summary judgment is appropriate.[81]

Conversely, "when prison officials maliciously and sadistically use force to cause harm…contemporary standards of decency are always violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."[82]

---

[78] *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *see also Fuentes v. Wagner*, 206 F.3d 335, 346 (3d Cir. 2000) ("[E]ven if we concede [that an inmate] has established at most that prison officials overreacted to the disturbance that he caused . . . any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'").

[79] *Brooks v. Kyler*, 204 F.3d 102, 107 (3d Cir. 2000) (citing *Hudson*, 503 U.S. at 6); *see also Wilkins*, 559 U.S. 34 (clarifying that *de minimis* force, rather than *de minimis* injury, is the dispositive issue).

[80] *Hudson*, 503 U.S. at 9.

[81] *Brooks*, 204 F.3d at 106 (quoting *Whitley*, 475 U.S. at 322).

[82] *Wilkins,* 559 U.S. at 37 (quoting *Hudson*, 503 U.S. 1).

In the matter *sub judice*, Wood's status as an inmate housed in the RHU is pertinent. RHU inmates have restricted privileges and movement because they pose a safety and security threat to staff and/or other inmates. Among the RHU restrictions is the use of the food aperture or wicket for, *inter alia*, the delivery and retrieval of drinking cups and meal trays.

Here, the RHU surveillance video, sans audio, commences with Civiello and another officer engaged in the duty of opening food apertures, collecting drinking cups and dinner meal trays *via* inmates passing those items through the food apertures, and then closing and securing the food apertures. In the course of this duty, Civiello arrives at Wood's cell. There is an exchange between Civiello and Wood which results in Civiello visibly reaching for his mace. Wood's arm is seen protruding from the wicket. Civiello appears to continue to speak to Wood. The other officer, who is attending to an adjacent cell, moves in the direction of Wood's cell and stands by. At this point, in an attempt to close the food aperture, Civiello resorts to force by pressing on it with his hands and using the weight of his body. When this method proves unsuccessful, Civiello steps back from the cell door, leans against the railing, and lifts his right leg and applies pressure with his right foot. The food aperture is eventually closed and secured. The other officer appears to briefly converse with Wood. Both officers then move on to the next cells.

Wood's deposition testimony fills gaps created by the lack of audio on the surveillance video. Specifically, it reveals that he played a key role in the scuffle and affirms the need for Civiello to resort to the application of force. For instance, Wood concedes that he directly disobeyed Civiello's order in refusing to return his cup and close the wicket until he received a food tray or spoke to a supervisor, causing Civiello to reach for his mace. Wood admits that he intentionally held open the wicket in a manner that prevented Civiello from spraying the mace into his cell. Civiello repeated the order to close the food aperture and return the cup. He refused. Wood further testified that, even after Civiello resorted to force, he did not remove his hands from the wicket, despite being able to do so. Instead, he continued to hold it open so as to prevent Civiello from closing it. He also proclaimed that he was holding the food aperture hostage.

This testimony, coupled with the videotape evidence, clearly demonstrates that Civiello resorted to force to effect compliance only after his other method of control, the issuance of several direct orders to close the wicket, proved ineffective and insufficient. It also reveals that Civiello fully comported with the directives contained in DC-ADM 201 which authorizes use of force against an inmate when a staff member reasonably believes such force is necessary to protect oneself or others

and/or to effect compliance with the rules and regulations when other methods of control are ineffective or insufficient.[83]

As concerns the relationship between the amount of force used and efforts made to temper the severity of a forceful response, the video shows a consistent and measured application of force by Civiello to achieve the purpose of closing the wicket. It does not portray any banging, smashing or kicking of the wicket, thereby dispelling Wood's assertions that Civiello banged and repeatedly smashed his hands in the food aperture and kicked the food aperture. It also demonstrates that his action complied with the DC-ADM 201 directive that when force is used, the least amount of force the staff member reasonably believes is necessary to achieve the authorized purpose is to be used.[84] Also, importantly, once the wicket was closed, the application of force immediately ceased.[85]

Finally, Wood suffered swelling and superficial abrasions on both hands. He was able to move, flex and extend the fingers, bilateral hands and wrists. Although it is not required that he show more than a *de minimis* injury,[86] the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry.[87]

---

[83] Doc. 37, p. 62.
[84] DC-ADM 201, Section III (B).
[85] *Id.* stating that "the use of force must stop once control is achieved."
[86] *see Wilkins*, 559 U.S. at 39 (clarifying the notion that a significant injury is a threshold requirement for stating an excessive force claim was rejected in *Hudson*, 503 U.S. at 7),
[87] *Id.* at 40 (noting that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim") (citing *Hudson*, 503 U.S. at 9 (internal quotations omitted).

Where a videotape refutes an inmate's claims that excessive force was used against him, and the video evidence does not permit an inference that prison officials acted maliciously and sadistically, summary judgment is entirely appropriate.[88] The video footage of this incident, coupled with Wood's deposition testimony, would lead a reasonable trier of fact to find that Defendant Civiello used the amount of force necessary to close the wicket under the circumstances.[89] No aspect of the video, or any other portion of the record, supports an assertion that Civiello acted maliciously or sadistically to cause harm. Hence, summary judgment in Civiello's favor is appropriate.

## IV. CONCLUSION

Based on the foregoing, Defendant's motions for summary judgment will be granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[88] *See Tindell v. Beard*, 351 F. App'x 591 (3d Cir. 2009).
[89] *Id.* at 596; see also, *Whitley*, 475 U.S. at 319; *Fuentes v. Wagner*, 206 F.3d 335, 346 (3d Cir. 2000) (noting that even a prison officer's "over-reaction" to an inmate-caused disturbance would fall short of supporting a finding of excessive force where the totality of the circumstances indicated that the force was applied in a good faith effort to maintain order).